```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
_____
                               :
JASON SMART-EL,                :
                               :       Civil Action No.
            Plaintiff,         :       04-3413 (NLH)
                               :
      v.                       :       OPINION
                               :
CORRECTIONAL MEDICAL SERVICES, :
INC., WILLIAM ANDRADE, JAMES   :
J. NEAL, M.D., JAMES RUMAN,    :
R.N., ROCK WELCH, ABU AHSAN,   :
M.D., BENJAMIN ROBINSON, M.D., :
and NARSIMHA REDDY, M.D.,      :
                               :
            Defendants.        :
_____:
```

APPEARANCES:
Daniel S. Weinstock, Esq.
FELDMAN, SHEPHERD, WOHLGELERNTER & TANNER, ESQS.
20 Brace Road, Suite 112
Cherry Hill, NJ 08034
        and
Rosemary Pinto, Esq.
FELDMAN & PINTO
1604 Locust Street, 2R
Philadelphia, PA 19103
*Attorney for Plaintiffs*

Jeffrey M. Scott, Esq.
Kerri E. Chewing, Esq.
ARCHER & GREINER, P.C.
One Centennial Square, P.O. Box 3000
Haddonfield, NJ 08033-0968
*Attorneys for Defendants Correctional Medical Services, Inc., William Andrade, James J. Neal, M.D., James Ruman, R.N., Rock Welch, Abu Ashan, M.D., Benjamin Robinson, M.D., and Narsimha Reddy, M.D.*

**HILLMAN, District Judge**

Before the Court is a motion for summary judgment filed by Correctional Medical Services, Inc., William Andrade, James J. Neal, M.D., James Ruman, R.N., Rock Welch, Abu Ashan, M.D.,

Benjamin Robinson, M.D., and Narsimha Reddy, M.D. (collectively, "defendants"). Defendants argue that plaintiff's claims are barred by the statute of limitations. For the reasons explained below, defendants' motion is granted.

## I. JURISDICTION

Plaintiff has alleged that defendants were deliberately indifferent to his serious medical needs in violation of his 8th Amendment right and, therefore, this Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

## II. BACKGROUND

In January 2000, Smart-El was informed by a doctor that he had hepatitis C ("HCV") and was prescribed and began taking "interferon" and "ribavirin" to treat his condition. In February 2000, Smart-El was arrested on charges of robbery and drug possession. At his sentencing, he informed the sentencing Judge that he was receiving drug therapy treatment for HCV. The Judge inquired whether Smart-El could continue receiving his treatment while incarcerated and was advised that he could.

Smart-El was incarcerated in August 2000 in the Atlantic County Jail for two weeks. While there, he received his medications for his HCV. Thereafter, Smart-El was transferred to a state prison and then to another state prison, South Woods, where he states that he continued to receive his medication.

2

Smart-El testified in deposition that in September 2000 he was informed by Dr. Robinson, a doctor assigned to the South Woods prison, that his treatment was being discontinued because it cost too much and because he was not seriously ill.  He also testified that Dr. Robinson told him they only give HCV medication to inmates who are within a year of being released.  Smart-El testified that it was his understanding from his previous treating physician that he should have undergone three to four more months of treatment.  He also testified that doctors at South Woods told him that he had "cleared the virus."

Smart-El filed approximately five medical slips requesting information about his drug treatment and requesting that it be continued.  The fifth medical slip was dated November 5, 2000.  He also testified that sometime before he filed the fifth medical slip, he spoke with his mother who told him that his condition was serious and could be fatal.

After he spoke with his mother, Smart-El testified that "around 2002" he contacted a lawyer about his medical condition.  He stated that nothing prevented him from filing a lawsuit in 2001 or 2002, but that he did not file a lawsuit until 2004.  He testified that he thought "they would probably get back to me and start giving me the medication so I didn't think it was necessary to file a lawsuit."  He also testified that in 2001 or 2002, he

read in the newspaper that a lawsuit was filed and thought "...okay, somebody is taking action so I'm going to take action."

Defendants state that Smart-El knew in 2000 that his HCV treatment had ceased and that he knew that he had a serious condition that could be fatal. They argue that since he knew of his cause of action in 2000, his lawsuit filed on July 20, 2004 is barred by the two-year statute of limitations. Smart-El argues that the statute of limitations was tolled by either the filing of the class action lawsuit in Bennett v. CMS, or by the discovery rule. Since Smart-El's claims were not tolled and since his cause of action accrued in 2000, defendants' motion is granted.

### III. DISCUSSION

#### A. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

4

248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### B. Tolling of Statute of Limitations under American Pipe

The statute of limitations applied in a 42 U.S.C. § 1983 case depends upon the underlying state statute governing personal

5

injury claims.  See O'Connor v. City of Newark, 440 F.3d 125, 126-27 (3d Cir. 2006); Cito v. Bridgewater Tp. Police Dept., 892 F.2d 23, 25 (3d Cir. 1989) (citing Wilson v. Garcia, 471 U.S. 261 (1985)).  In New Jersey, a personal injury action must be commenced within two years of the accrual of the cause of action.  See N.J.S.A. 2A:14-2; O'Connor, 440 F.3d at 127 (citing Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987)).

The parties agree that the limitations period for Smart-El's § 1983 claim is two years.  Defendants argue that Smart-El filed his claim beyond the two-year statute of limitations and it is therefore barred.  Smart-El does not dispute that his complaint was filed beyond the applicable limitations period, but argues that the statute of limitations was tolled by the filing of the class action lawsuit, Bennett v. CMS, on October 16, 2002.[1]

Over thirty years ago, the Supreme Court decided that the filing of a class action complaint tolls the statute of limitations for all purported members of the class who timely intervene "... at least where class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable.'" American Pipe & Const. Co. v. Utah, 414 U.S. 538, 552-53 (1974).  This rule was extended in Crown, Cork & Seal Co., Inc. v. Parker,

---

[1] On May 14, 2008, this Court entered an Order denying class certification in Bennett v. CMS, No. 02-4993(NLH).

6

462 U.S. 345, 354 (1983) to toll the statute of limitations "... for all members of the putative class until class certification is denied." "At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." Id.; see also Yang v. Odom, 392 F.3d 97, 111 (3d Cir. 2004) (holding that "where class certification has been denied solely on the basis of the lead plaintiffs' deficiencies as class representatives, and not because of the suitability of the claims for class treatment, American Pipe tolling applies to subsequent class actions"), cert. denied Odom v. Yang, 544 U.S. 1048 (2005).

Here, a class action complaint was filed in Bennett in which Smart-El was a purported member of the requested class. The motion for class certification was denied by Order of this Court entered on May 14, 2008. American Pipe and Crown instruct us that after the denial of class certification, class members may be able to either file their own lawsuits or intervene.[2] Smart-El, however, filed his complaint on July 20, 2004, almost four years before the Court denied class certification. Therefore, the issue is whether the class action tolling doctrine applies to

---

[2] In Bennett, the motion for class certification was denied in part because the plaintiffs did not satisfy the requirements under Fed.R.Civ.P. 23, other than numerosity, and, therefore, their § 1983 claims were unsuitable for a class action. As such, American Pipe tolling may not be available to Smart-El on that basis. See Yang, 392 F.3d at 111. However, since Smart-El filed his complaint before the denial of certification, we do not address that issue in this Opinion.

suits filed before the denial of certification.

This issue was addressed by the Sixth Circuit in Wyser-Pratte Management Co., Inc. v. Telxon Corp., 413 F.3d 553, 568 (6th Cir. 2005). In Wyser-Pratte, the Sixth Circuit found that "... a number of district courts have held that a plaintiff who chooses to file an independent action without waiting for a determination on the class certification issue may not rely on the American Pipe tolling doctrine." Id. The Sixth Circuit referred to this scenario as a "forfeiture" of the class action tolling doctrine and found that the purposes of American Pipe tolling are not furthered when plaintiffs file independent actions before decision on the issue of class certification. Id. at 569. The Court relied on the following reasoning in In re WorldCom, Inc. Sec. Litig., 294 F.Supp.2d 431, 452 (S.D.N.Y. 2003) for foregoing the filing of additional lawsuits while a class action motion is pending:

> Many good purposes are served by such forbearance, as American Pipe and Crown, Cork themselves spell out. The parties and courts will not be burdened by separate lawsuits which, in any event, may evaporate once a class has been certified. At the point in a litigation when a decision on class certification is made, [plaintiffs] usually are in a far better position to evaluate whether they wish to proceed with their own lawsuit, or to join a class, if one has been certified.

Id. (omitting citations), reconsid. denied, 308 F.Supp.2d 214, 230 (S.D.N.Y. 2004); see also Yang, 392 F.3d at 111 (stating that

8

"... it has been well-settled that would be class members are justified--even encouraged--in relying on a class action to represent their interests with respect to a particular claim or claims, and in refraining from the unnecessary filing of repetitious claims.") (citing American Pipe, 414 U.S. at 550)). The Sixth Circuit found no cases rejecting this "forfeiture" argument. Id. (citing In re Ciprofloxacin Hydrochloride Antitrust Litig., 261 F.Supp.2d 188, 221 (E.D.N.Y. 2003)(finding that filing of a subsequent class action claim before the court determines class certification in the initial action undermines the policy behind the class action tolling doctrine); Rahr v. Grant Thornton LLP, 142 F.Supp.2d 793, 800 (N.D.Tex. 2000) (finding class action tolling doctrine was never intended to apply to plaintiffs who file separate suits prior to a decision being reached on the class certification issue); Stutz v. Minn. Mining & Mfg. Co., 947 F.Supp. 399, 404 (S.D.Ind. 1996) (stating "... it is also true that a class member has the option of pursuing an individual claim if he opts out of a class action *after* it has been certified)(emphasis in original)).³

---

³ The other case cited in Wyser-Pratte, Wachovia Bank & Trust Co. v. Nat'l Student Mktg Corp., 461 F.Supp. 999, 1012 (D.D.C. 1978) was reversed upon a finding that the lower court retroactively applied the wrong statute of limitations period and erred in its interpretation of the Securities Exchange Act of 1934, but found its ruling on American Pipe tolling correct. See Wachovia Bank and Trust Co., N. A. v. National, 650 F.2d 342, 346 n.7 (C.A.D.C. 1980)(concluding district court was correct that American Pipe tolling did not apply because class certification

9

This Court also finds no reason why the filing of the Bennett class action case would toll the statute of limitations for Smart-El's claims where Smart-El filed his lawsuit four years before the denial of the class certification. The filing of his independent lawsuit suggests that Smart-El may have intended to opt out of the Bennett class members. The lawsuit also runs contrary to the reasoning underlying the tolling of the statute of limitations. Tolling is intended for those who refrain from the unnecessary filing of repetitious claims. See American Pipe, 414 U.S. at 550.

Therefore, the filing of the class action complaint in Bennett did not toll the statute of limitations of Smart-El's § 1983 claim which was filed four years prior to this Court's denial of the petition for class certification.

**B.  Statute of Limitations Tolling under Discovery Rule**

Under New Jersey law, tolling the statute of limitations under the "discovery rule" "... may be applicable when 'injured parties reasonably are unaware that they have been injured, or,

---

was granted and because plaintiffs did not attempt intervention in the class action but rather filed their own action nine months before the district court granted certification), cert. denied by White & Case v. Wachovia Bank & Trust Co., N.A., 452 U.S. 954 (1981), Peat, Marwick, Mitchell & Co. v. Wachovia Bank & Trust Co., 452 U.S. 954 (1981), and Joy v. Wachovia Bank & Trust Co., N.A., 452 U.S. 954 (1981).

although aware of an injury, do not know that the injury is attributable to the fault of another.'"  Maldonado v. Leeds, 865 A.2d 741 (N.J.Super.A.D. 2005)(citing Baird v. Am. Med. Optics, 713 A.2d 1019 (N.J. 1998); see also Savage v. Old Bridge-Sayreville Medical Group, P.A., 633 A.2d 514, 518 (N.J. 1993) (stating that knowledge of fault for purposes of the discovery rule requires "... only the awareness of facts that would alert a reasonable person exercising ordinary diligence that a third party's conduct may have caused or contributed to the cause of the injury and that conduct itself might possibly have been unreasonable or lacking in due care.").  "The discovery rule is essentially a rule of equity." Abboud v. Viscomi, 543 A.2d 29, 32 (N.J. 1988) (citing Lopez v. Swyer, 300 A.2d 563 (N.J. 1973)). Determining whether it applies requires "... identification, evaluation, and weighing of the equitable claims of the parties." Id. (citing Vispisiano v. Ashland Chem. Co., 527 A.2d 66 (N.J. 1987)).  It is plaintiff's burden to explain why he reasonably could not have discovered his cause of action in time to comply with the limitation period so as to justify the tolling of the statute of limitations.  Phillips v. Gelpke, 921 A.2d 1067, 1076 (N.J. 2007) (citing Caravaggio v. D'Agostini, 765 A.2d 182 (2001); 51 Am.Jur.2d Limitation of Actions § 179 (2000)).

    Smart-El argues that because Dr. Robinson told him that his nine months of treatment was sufficient and because other doctors

told him that he had cleared the virus that he was unaware of his injury.  He relies on <u>Abboud</u>, for the proposition that reliance on representations of a treating physician can toll the statute of limitations under the discovery rule. 543 A.2d at 33-34.

In <u>Abboud</u>, the plaintiff had her wisdom tooth extracted on July 1, 1980.  <u>Id.</u> at 30.  Afterwards, she experienced substantial pain, failed to recover normal feeling on the left side of her tongue, cheek, and gums, experienced inability to distinguish various tastes and developed "hypo-hyperthermia," (a condition in which she would feel exaggerated sensations from food and drink in her mouth).  <u>Id.</u>  Although she met with her dentist about these problems, he told her that her discomfort was a normal part of the healing process which could take a year or more, and that her condition was not permanent.  <u>Id.</u>  The court found it significant that her dentist told her that the intermittent nature of her symptoms was indicative of continuing regeneration and healing, and therefore a good sign.  <u>Id.</u>  Approximately three years later, plaintiff went to a free neurological screening and learned for the first time that she had suffered permanent nerve damage.  She then consulted an attorney and filed suit approximately six months later on June 13, 1984, nearly four years after the alleged tort was committed.  <u>Id.</u> at 31.  The court found that the discovery rule applied and that her claim was not barred by the statute of limitations.  <u>Id.</u>

This case is distinguishable from <u>Abboud</u>. In <u>Abboud</u>, the court found that the dentist's representations to the plaintiff "... reasonably induced her not to sue within the normal limitations period." <u>Id.</u> at 33. Here, Smart-El was aware before he entered prison that he was to continue his drug therapy treatment. He informed the Judge of his drug therapy and said that the Judge specifically inquired into having Smart-El continue his treatment while in prison. After being told by Dr. Robinson that his treatment was being discontinued, Smart-El filed five medical slips requesting that his medication be continued. He also spoke with his mother who told him that his condition was serious and possibly fatal. He testified that his mother tried to contact the first treating doctor outside of the prison in order to have his medication resumed. Smart-El testified that he understood in 2000 and in 2001 that his condition was serious and that his medication should have been continued for another three months. Unlike the plaintiff in <u>Abboud</u> who was assured by the dentist that her condition was temporary and that her symptoms indicated that she was healing, here, Smart-El was told by the first treating physician that he needed to take his medication for another three to four months after being incarcerated and Smart-El understood that his condition was serious and possibly fatal.

Smart-El further testified that nothing prevented him from

filing a lawsuit but that he waited to see if they would resume his medication.  He also testified that he decided to file a lawsuit after reading about another inmate's lawsuit in the newspaper.  The law is clear that "[t]he statute of limitations begins to run when the plaintiff is aware, or reasonably should be aware, of facts indicating that she has been injured through the fault of another, not when a lawyer advises her that the facts give rise to a legal cause of action."  Baird v. American Medical Optics, 713 A.2d 1019, 1026 (N.J. 1998).

Thus, the testimony of the plaintiff along with the facts alleged by plaintiff show that Smart-El was aware of his injury in 2000 when the prison doctor discontinued his medication.  Therefore, the statute of limitations began to run in 2000 and Smart-El's complaint filed on July 20, 2004 is time-barred under New Jersey's two year statute of limitations.

### IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted.  An Order consistent with this Opinion will be entered.

                                           s/Noel L. Hillman  
                                           NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey